UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| AFFINITY LABS OF TEXAS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BLACKBERRY LIMITED<br>f/k/a RESEARCH IN MOTION LIMITED,<br>AND BLACKBERRY CORPORATION<br>f/k/a RESEARCH IN MOTION CORP.,<br><br>Defendants. | Case No. 6:13-cv-362<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Affinity Labs of Texas, LLC ("Affinity Labs") for its causes of action against Defendants, Blackberry Limited f/k/a Research in Motion Limited and BlackBerry Corporation f/k/a Research in Motion Corporation (collectively, "Blackberry" and/or "Defendants"), states and alleges on knowledge and information and belief as follows:

### PARTIES

1.      Plaintiff Affinity Labs is a Texas limited liability company having offices at 31884 RR 12, Dripping Springs, TX 78620.

2.      On information and belief, Blackberry Limited f/k/a Research in Motion Limited is a Canadian company having its principal place of business at 2200 University Avenue East, Waterloo, Ontario, Canada N2K 0A7.

1

1823940.1

3. On information and belief, Blackberry Corporation f/k/a Research in Motion Corporation is a Delaware corporation with its principal place of business at 5000 Riverside Drive, Suite 100E, Irving, TX 75039.

## JURISDICTION

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), in that this action arises under the federal patent statutes, 35 U.S.C. §§ 271 and 281-285.

5. This Court has personal jurisdiction over Blackberry. Upon information and belief, Blackberry has committed and continues to commit acts giving rise to this action within Texas and within this judicial district and Blackberry has established minimum contacts within the forum such that the exercise of jurisdiction over Blackberry would not offend traditional notions of fair play and substantial justice. For example, Blackberry has committed and continues to commit acts of infringement in this District, by among other things, offering to sell and selling products that infringe the Asserted Patent, including smartphones. In conducting its business in Texas and this judicial district, Blackberry derives substantial revenue from infringing products being sold, used, imported, and/or offered for sale or providing service and support to Blackberry's customers in Texas and this District, and will continue to do so unless enjoined by this Court.

## VENUE

6. Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Blackberry has committed acts within this judicial district giving rise to this action, and Blackberry has and continues to conduct business in this judicial

district, including one or more acts of selling, using, importing, and/or offering for sale infringing products or providing service and support to Blackberry's customers in this District.

7. Venue in the Western District of Texas is further proper because Affinity Labs is headquartered in this District in Dripping Springs, Texas.

8. Venue in the Western District of Texas is further proper because the majority of Affinity Labs' documents and relevant evidence is located at Affinity Labs' headquarters within this District and numerous witnesses are also located within this District.

9. Venue in the Western District of Texas is also proper because Affinity Labs is organized and governed by the limited liability company laws of Texas and is subject to taxes in Texas. Affinity Labs maintains a registered agent for service of process in Texas.

10. Venue in the Western District of Texas is also proper because this District is centrally located to resolve common issues of fact among Affinity Labs and the Defendants.

## BACKGROUND

### Affinity Labs

11. Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

12. Affinity Labs was founded in 2008 by Russell White and Harlie Frost.

13. Russell White is a successful entrepreneur and patent attorney. Mr. White grew up in Houston, Texas, and has an undergraduate degree in mechanical engineering from Texas A&M. Mr. White also graduated from the University of Temple Law School. After earning his law degree, Mr. White co-founded SBC Knowledge Ventures, an entity within AT&T.

14. Mr. White is also a prolific inventor. Mr. White is listed as an inventor on at least twenty-five separate United States patents.

15. On March 28, 2000, Mr. White and Kevin R. Imes filed a detailed patent application, No. 09/537,812 ("the '812 application") with the United States Patent and Trademark Office ("PTO").

16. The '812 application broadly addressed the problem of accessing, managing, and communicating digital audio and video content. In doing so, the '812 application disclosed a number of inventions relating to creating a new media ecosystem with a portable electronic audio device such as an MP3 player or cell phone at its center.

17. The '812 application also disclosed the ability to download music and playlists from an online store, or stream Internet radio, to the portable electronic device, and then connect the device to a second device such as an automobile with a display. As disclosed in the '812 application, the music available on the portable device can then be displayed and selected using controls on an automobile stereo system, and played through the speakers.

18. Mr. White and Mr. Imes made this disclosure in the '812 application over a year before the iPod was released in October 2001, approximately 3 years before the iTunes Store sold its first song, 7 years before the first iPhone was sold, 8 years before the App Store was launched, and 8 years before the functionality of having the music available on a portable device be displayed and selected using controls on an automobile stereo system and played through the speakers was available using an iPhone and some luxury vehicles. This same connective functionality did not become available on Android phones until more than 9 years after Mr. White and Mr. Imes filed the '812 application.

19. On September 10, 2013, the PTO issued United States Patent No. 8,532,641, entitled "System and Method for Managing Media" ("the '641 patent" or "the Asserted Patent"), a copy of which is attached as Exhibit A. The '641 patent was issued from a continuation

application claiming priority to the '812 application, which was filed with the PTO on March 28, 2000 and issued on March 6, 2007 as United States Patent No. 7,187,947 entitled "System and Method for Communicating Selected Information to an Electronic Device."

20. Other patents in the '641 patent family have been cited by major businesses in the computer, software, communications, automotive, and mobile industries. For example, U.S. Patent No. 7,324,833 and U.S. Patent No. 7,634,228 have been cited in at least 38 patents and publications, with many of these patents assigned to corporations such as Apple, AT&T, Toyota, Google, Nokia, Bose, IBM, Hewlett-Packard, and Volkswagen.

21. Affinity Labs holds legal title, by assignment, to the Asserted Patent.

### Blackberry

22. Blackberry sells smartphones. Products sold by Blackberry include, but are not limited to, the Blackberry Z10 smartphone, Blackberry Curve 3G smartphone, and Blackberry 9930 Bold smartphone.

23. Blackberry's smartphones have a display and memory. For example, the Blackberry Z10 smartphone has a 4.2-inch display, two gigabytes of RAM, and 16 gigabytes of flash memory.

24. Blackberry sells smartphones that are loaded with the Blackberry Operating System when sold. For example, when sold, the Blackberry Z10 smartphone is loaded with version 10 of the Blackberry Operating System.

25. Blackberry's smartphones have the ability to play music stored locally on the device. For example, the Blackberry Z10 smartphone has the ability to play digitally compressed songs.

26. Blackberry's smartphones allow users to navigate through locally saved songs by name. For example, the Blackberry Z10 smartphone allows users to navigate through a list of songs organized by name, and displays graphical items such as the song name and album art while playing digitally compressed songs.

27. Blackberry's smartphones have the ability to connect to a separate electronic device having a screen through use of wireless communication module, allowing a user to select songs stored on the smartphone for playback via that separate electronic device. For example, the Blackberry Z10 is capable of connecting to a Ford automobile containing a Ford SYNC entertainment system via Bluetooth. Upon that connection, the Ford SYNC system can display a selectable menu item associated with a song stored on the Blackberry Z10. By pressing soft buttons on the Ford SYNC system's display, a user can choose songs stored on the Blackberry Z10 to be wirelessly communicated to the Ford SYNC system and played through the automobile's speakers.

## COUNT I

### Infringement of U.S. Patent No. 8,532,641 by Blackberry

28. Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

29. Upon information and belief, in violation of 35 U.S.C. § 271(a), Blackberry has infringed, and if not enjoined, will continue to infringe the '641 patent by (1) manufacturing, using, marketing, selling, offering for sale, and/or importing, without authority, products and services that are covered by one or more claims of the '641 patent, literally and/or under the doctrine of equivalents; and/or (2) inducing infringement of one or more claims of the '641 patent, in violation of 35 U.S.C. § 271(b). In particular, Blackberry infringes one or more claims

of the '641 patent directly and indirectly, literally and under the doctrine of equivalents, and by inducement by (1) manufacture, use, marketing of, sale, offer for sale, and/or importation of Blackberry smartphones including at least the Blackberry Z10; and (2) using Blackberry smartphones including at least the Blackberry Z10, as part of the audio system and methods claimed in the '641 patent.

30. Also on information and belief, Blackberry markets and sells smartphones, including at least the Blackberry Z10. Blackberry markets and sells its smartphones to customers and potential customers that include, for example, companies in the smartphone industries in the United States, in addition to individual customers in the United States.

31. In addition, on information and belief, Blackberry has actively induced and is actively inducing others, such as Blackberry's customers, to directly infringe the '641 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b). For example, on information and belief, Blackberry and/or its distributors or representatives have sold or otherwise provided smartphones, including for example, the Blackberry Z10 —to third parties, such as Blackberry's customers. Blackberry's customers, on information and belief, have directly infringed and are directly infringing the '641 patent. Moreover, Blackberry specifically intends for and encourages its customers to use the Asserted Patent's technology in violation of the '641 patent. For example, by marketing and selling its smartphones, Blackberry has encouraged and is encouraging its customers to use its smartphones and, thus, to directly infringe the '641 patent.

32. Blackberry does not have a license or permission to use the claimed subject matter in the '641 patent.

33. Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of Blackberry's infringement of the '641 patent.

34. Blackberry will continue to infringe the '641 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

35. Affinity Labs is entitled to recover from Blackberry the damages sustained by Affinity Labs as a result of Blackberry's wrongful acts in an amount subject to proof at trial.

## DEMAND FOR TRIAL BY JURY

Affinity Labs demands a jury trial on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Affinity Labs prays for the following relief:

1. A declaration that Blackberry has infringed and is infringing the '641 patent and is liable to Affinity Labs for infringement;

2. An order enjoining Blackberry from infringing the '641 patent;

3. If a permanent injunction is not granted, a judicial determination of the conditions for future infringement such as a royalty bearing compulsory license or such other relief as the Court deems appropriate;

4. An award of damages, including pre-judgment and post-judgment interest, in an amount adequate to compensate Affinity Labs for Blackberry's infringement of the '641 patent, and that the damages be trebled pursuant to 35 U.S.C. § 284;

5. An equitable accounting of damages owed by Blackberry for the period of infringement of the '641 patent, following the period of damages established by Affinity Labs at trial;

6. A finding that this case is exceptional and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

7. An award of costs, expenses, and disbursements; and

8. Such other and further relief as the Court deems Affinity Labs may be entitled to in law and equity.

Respectfully submitted,

**LOOPER, REED & MCGRAW, P.C.**

DAVID G. HENRY, SR.
State Bar No. 09479355
RUSSELL E. JUMPER
State Bar No. 24050168
1601 Elm Street; Ste. 4600
Dallas, Texas 75201
(214)954-4135
(214)953-1332 (Facsimile)
dhenry@lrmlaw.com
rjumper@lrmlaw.com

**NAMAN, HOWELL, SMITH & LEE, PLLC**

JOHN P. PALMER
State Bar No. 15430600
P.O. Box 1470
400 Austin Ave, 8th Floor
Waco, TX 76703-1470
Phone: (254) 755-4100
Fax: (254) 754-6331
palmer@namanhowell.com

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

RONALD J. SCHUTZ   (MN Bar No. 130849)
(*pro hac vice to be submitted*)
CYRUS A. MORTON (MN Bar No. 287325)
(*pro hac vice to be submitted*)
DANIEL R. BURGESS (MN Bar No. 0389976)
(*pro hac vice to be submitted*)
SHIRA T. SHAPIRO (MN Bar No. 0390508)
(*pro hac vice to be submitted*)
KRISTINE A. TIETZ (MN Bar No. 0393477)
(*pro hac vice to be submitted*)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile:  (612) 339-4181
E-mail:   RJSchutz@rkmc.com
              CAMorton@rkmc.com
              DRBurgess@rkmc.com
              STShapiro@rkmc.com
              KATietz@rkmc.com

10

By: */s/ David G. Henry*
   DAVID G. HENRY, SR.
   State Bar No. 09479355

**ATTORNEYS FOR PLAINTIFF AFFINITY LABS OF TEXAS, LLC**

1823940.1